11 P.3d 44

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joseph O. SILVA, Defendant–Appellant.**

No. 25217.

Court of Appeals of Idaho.

Aug. 8, 2000.

Rehearing Denied Sept. 25, 2000.

Michael J. Wood, Twin Falls, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHWARTZMAN, Judge.

Joseph O. Silva appeals from his conviction for possession of a controlled substance, methamphetamine, challenging the district court's denial of his motion to suppress and refusal of his proposed jury instructions. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 26, 1998, shortly before 1:00 p.m., Twin Falls County Sheriff's Deputy Morgan Case observed a white Ford pickup truck traveling at seventy-five miles per hour in a fifty mile-per-hour zone. Case conducted a traffic stop and informed the driver, Joseph Silva, of the reason for the stop. Prior to approaching the truck, Case had not known that Silva was the driver. Case's view of the driver was hindered by the truck's tinted window glass and its height. After inquiring into whether Silva had any drugs or weapons in the truck, Case obtained Silva's driver's license, registration and proof of insurance and returned to his vehicle. There, he checked Silva's driver's status, inquired about outstanding warrants, and began writing out a citation for speeding.

Case had previously confronted Silva while investigating a domestic disturbance involving Silva. On that prior occasion, Case arrested Silva for obstructing and delaying an officer when Silva refused to speak to him about the domestic disturbance. After that incident, Case learned, through confidential informants, that Silva had made threats to kill him. As a result thereof, Case called for backup as a safety precaution.

Case then completed the citation for speeding. He next approached the rear of Silva's truck and asked Silva to step out and come to the rear of truck. Case, standing at the back of Silva's truck, took up a defensive posture but did not draw his service pistol or nightstick. Case spent about fifteen seconds explaining the citation to Silva, the amount of the fine, and how Silva could pay it. Then, without immediately serving the citation which was still in his hand, Case asked, in a conversational tone, "Do you mind if I take a look through your truck. Are you alright with that?" Silva immediately responded, "Yeah, go ahead."

At Case's direction, Silva walked over to another officer who patted Silva down for weapons. Case then placed the citation in his belt and looked inside the truck cab. Under the driver's side floor mat he found a broken plastic vial, parts of plastic bags and a powdery substance Case believed to be methamphetamine.

Case told Silva that he suspected the powder under the driver's side floor mat was methamphetamine. While awaiting the results of a field test conducted by another officer, Case engaged Silva in casual conversation, asking Silva if he was still running his auto body business in Buhl. Silva responded by stating that he had been having problems with his wife and that he had been using drugs.

The substance tested positive for methamphetamine. Silva was then arrested for, and charged with, possession of a controlled substance, methamphetamine. Case recorded Silva's consent on his pocket microcassette recorder and recorded the complete traffic stop on video.

Silva filed a motion to suppress all the evidence, the drugs and his statements, on the ground that he was detained unlawfully and that the search was unreasonable under both the Idaho and federal constitutions. At the hearing on Silva's motion to suppress, Case testified to the above facts. Case also testified that, had Silva refused consent, he would not have detained him further.

Silva testified that he had previously been arrested by Case for obstructing an officer for refusing to talk with him during the investigation of a domestic disturbance. Silva stated that he consented to the search of his truck because he believed Case would

arrest him for obstruction if he refused. Silva also said that Case had not told him he was free to go after discussing the traffic citation with him.

Counsel for Silva argued that Case's conduct in the past had made any future contacts with Silva inherently coercive, requiring an explanation that Silva was free to leave before asking for consent to search, and that Case's failure to do so required suppression of all the evidence and Silva's subsequent statements. Additionally, counsel argued that Silva's consent to Case's request to "look through" Silva's truck meant, literally, that Case had permission to look, not to search, inside the truck. The district court denied Silva's motion to suppress, ruling that Silva's consent was voluntary and his statements were not the product of custodial interrogation.

Thereafter the court orally amended its findings of fact to conform to the videotape which showed that Case had not served the traffic citation before asking Silva for consent to search his truck. The district court again ruled that Silva's consent was voluntary and Case's failure to serve the citation and return Silva's documents did not, alone, constitute an unlawful detention. Counsel for Silva asked the court to suppress Silva's statement about having problems with his wife and getting into drugs. The court took the matter under advisement.

Counsel for Silva filed a motion *in limine* seeking to have Silva's statement about using drugs declared irrelevant and inadmissible under I.R.E. 402 and 403. The trial court denied the motion, again ruling that the statements were admissible and not the result of custodial interrogation.

A jury trial was held. Silva submitted a proposed set of jury instructions, including a *Holder*, 100 Idaho 129, 594 P.2d 639 (1979) instruction and a constructive possession instruction. The district court rejected the *Holder* instruction as unnecessary and ruled that the question of constructive possession was covered by instructions # 17 and # 18. The jury returned a verdict of guilty of possession of a controlled substance, methamphetamine. At sentencing, the district court imposed a term of six years imprisonment

with three years fixed. Sentence was suspended and Silva was placed on three years probation. Silva appeals.

## II.

## THE DISTRICT COURT'S DENIAL OF SILVA'S MOTION TO SUPPRESS

### A. Standard Of Review

In reviewing a trial court's ruling on a motion to suppress, we employ a bifurcated standard. *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct.App.1998). We accept the trial court's findings of fact that are supported by substantial evidence and freely review the application of constitutional principles to the facts as found. *Id.* The determination of whether a search is reasonable under the Fourth Amendment is a question of law over which we exercise free review. *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993).

The lawfulness of a search is to be determined by the court, based upon an objective assessment of the circumstances which confronted the officer at the time of the search. *See State v. Murphy*, 129 Idaho 861, 863, 934 P.2d 34, 36 (Ct.App.1997); *State v. Shepherd*, 118 Idaho 121, 124, 795 P.2d 15, 18 (Ct.App. 1990.)

### B. Analysis

Both Article 1, § 17 of the Idaho Constitution and the Fourth Amendment to the United States Constitution prohibit unreasonable searches and seizures. Stopping an automobile and detaining its occupants constitutes a "seizure" even if the purpose of the stop is limited and the detention quite brief. *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660, 667–68 (1979); *State v. Luna*, 126 Idaho 235, 237, 880 P.2d 265, 267 (Ct.App.1994). An investigative stop must be justified by a reasonable suspicion, derived from specific articulable facts, that the person has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236–37 (1983); *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607, 618

(1975); *State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Fry,* 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct. App.1991). The investigative stop must be temporary and any "inquir[ies] must be 'reasonably related in scope to the justification for their initiation.'" *Brignoni–Ponce,* 422 U.S. at 881, 95 S.Ct. 2574 at 2580, 45 L.Ed.2d 607 at 616–617 (quoting *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 910–11 (1968); *State v. Martinez,* 129 Idaho 426, 430, 925 P.2d 1125, 1129 (Ct.App. 1996). Similarly, the investigative methods employed should be the least intrusive means *reasonably* available to verify or dispel the officer's suspicion in a short period of time. *Id.* It is the state's burden to demonstrate that the seizure it seeks to justify on the basis of reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Id.*

 The initial traffic stop in this case was for speeding. Case asked Silva to exit his vehicle in preparation for handing and explaining the ticket to him. This procedure is within the police officer's discretion and is not otherwise unlawful. *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333–34, n. 6, 54 L.Ed.2d 331, 337, n. 6 (1977). Case spent approximately fifteen seconds explaining the citation to Silva and how to pay it. Case's inquiry—"Do you mind if I take a look through your truck. Are you alright with that?"—followed immediately after the brief explanation of the ticket procedure. At the moment he asked for consent, Case was holding the completed citation and Silva's driver's documents in his hand. While the initial purpose of the traffic stop—to issue a citation—perhaps could have been completed at the time Case sought and received permission to look through Silva's vehicle, the fact that Case did not immediately issue the citation and inform Silva that he was free to leave before requesting consent is not dispositive. *Ohio v. Robinette,* 519 U.S. 33, 39–40, 117 S.Ct. 417, 421–22, 136 L.Ed.2d 347, 354–55 (1996) (rejecting Ohio's first-tell-then-ask rule under Fourth Amendment analysis). Given that Silva was not unlawfully detained at the moment Case asked for permission to search, we cannot conclude that the question itself made any further detention unlawful.

*See and compare State v. Zavala,* 134 Idaho 532, 536–537, 5 P.3d 993, 997–998 (2000). The additional second or two that Case took to ask for consent and in which Silva replied in the affirmative was objectively reasonable.

 Silva challenges the voluntariness of his consent on other grounds, asserting that because Case had previously arrested him for refusing to talk with him during Case's investigation of a domestic disturbance—resulting in a charge of obstructing and delaying an officer—that Silva's subjective fear of being arrested for not cooperating with Case made his consent involuntary. The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297, 302–02 (1991); *State v. Staatz,* 132 Idaho 693, 696, 978 P.2d 881, 884 (Ct.App.1999). The mere fact that an officer has previously arrested an individual, rightly or wrongly, does not, in and of itself, give rise to coercive circumstances in the next meeting between the same officer and individual. At a suppression hearing the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Fleenor,* 133 Idaho 552, 555, 989 P.2d 784, 787 (Ct.App.1999); *State v. Whiteley,* 124 Idaho 261, 265, 858 P.2d 800, 804 (Ct.App. 1993). The district court's factual findings are supported by substantial and competent evidence, and thus we will not substitute a different conclusion on appeal regarding conflicting testimony. *Id.*

 Finally, Silva argues that Case exceeded the scope of Silva's consent. Case asked for permission to "look through" Silva's truck and Silva agreed. As implicitly found by the district court, a reasonable and prudent officer would have viewed Silva's consent as permission to search the entire cab, including under the floor mats, as Case did here. *See State v. Frizzel,* 132 Idaho 522, 524 n. 1, 975 P.2d 1187, 1189 n. 1 (Ct.App. 1999). We note that Silva never objected or attempted to restrict the scope of his consent to search.

Accordingly, the district court's denial of Silva's motion to suppress is affirmed. Case's momentary delay in serving the citation and returning Silva's driver's documents did not cause Silva to be unlawfully detained. Silva then freely and voluntarily consented to the search of his truck.

## III.

## THE DISTRICT COURT'S RULING THAT SILVA'S STATEMENT ABOUT USING DRUGS WAS ADMISSIBLE

### A. Standard Of Review

Ordinarily, the determination of whether police are required to provide *Miranda* warnings presents a mixed question of law and fact. The trial court's findings of fact underlying the totality of the circumstances are reviewed for clear error, but application of constitutional standards to those facts is given free review. *State v. Kuzmichev*, 132 Idaho 536, 542–44, 976 P.2d 462, 468–70 (1999) (citing *State v. Birkla*, 126 Idaho 498, 501, 887 P.2d 43, 46 (Ct.App. 1994)). Where, as here, the facts are not in dispute, we freely review the application of constitutional standards to those facts.

### B. Analysis

*Miranda* warnings must be given to a suspect who is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court, in *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279–80 (1983), explained that "custody" for purposes of the *Miranda* requirement turns on whether there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." This standard is an objective test; whether a reasonable person would believe he or she was in police custody to a degree associated with formal arrest, not whether the person would believe he or she was not free to leave. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317, 336 (1984).

The facts are not in dispute. Based upon the transcript and videotape, the district court determined that Case had found a powdery substance he suspected to be methamphetamine under the driver's side floor mat of Silva's truck. While another officer was conducting a field test of the substance, Case approached Silva, informed him of what he had found and what he suspected it to be. Case then said that he was "taking control of the situation." Silva asked what would happen next, and Case said that if the test was negative, Silva would be free to go. While waiting for the test results, Case asked Silva if he was still operating his body shop business in Buhl, Idaho. Silva responded with a statement regarding the personal problems he was having with his wife, which had led him to use drugs.

Based upon these facts, the trial court ruled that Silva was not being held in custody, or otherwise under *de facto* arrest, at the time he made his statement about using drugs. The court also ruled that Silva's statement was volunteered and not in response to questioning designed to elicit incriminating responses. We need not determine whether Silva was "in custody" for purposes of triggering *Miranda*. Suffice it to say that Case's casual inquiry into whether Silva was still in the auto body business was not "interrogation" in the constitutional sense of police words or conduct that police should know are reasonably likely to elicit an incriminating response from the suspect. *See Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980); *compare State v. Frank*, 133 Idaho 364, 370, 986 P.2d 1030, 1036 (Ct.App. 1999). Thus, Silva was not being interrogated. Accordingly, the trial court correctly denied Silva's motion *in limine* seeking to have his drug use admission declared inadmissible as obtained in violation of *Miranda*.

## IV.

## THE DISTRICT COURT'S REJECTION OF SILVA'S REQUEST FOR A *HOLDER* INSTRUCTION AND AN INSTRUCTION ON CONSTRUCTIVE POSSESSION

### A. Standard Of Review

Whether the jury has been properly instructed is a question of law over

which we exercise free review. *State v. Rozajewski*, 130 Idaho 644, 646, 945 P.2d 1390, 1392 (Ct.App.1997). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *Id*, at 646, 945 P.2d at 1392 (citing *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App.1993)).

## B. Necessity Of A *Holder* Instruction

Silva argues that the trial court committed reversible error in denying his request for a *Holder* instruction. *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979). He argues that the state's case rested entirely upon circumstantial evidence, in that there was no direct evidence that Silva knew there was methamphetamine powder under the floor mat in his truck. Thus, he argues that he was entitled to a *Holder* instruction advising the jury that if the evidence is susceptible to two reasonable interpretations, one indicating guilt and the other innocence, that the jury must adopt the interpretation leading to innocence.

Determining whether a *Holder* instruction is necessary requires close examination of the evidence upon which the prosecution has relied. A *Holder* instruction must be given when the state's case rests *entirely* upon circumstantial evidence. *State v. Sundquist*, 128 Idaho 780, 781, 918 P.2d 1225, 1226 (Ct. App.1996). Silva argues that only circumstantial evidence pointed to him as the possessor of the methamphetamine found in the truck. However, in addition to his sole occupancy in and ownership of the truck, as well as the close proximity of the drugs to his person, Silva admitted to Case that he had been using drugs. Such admission constituted direct evidence and obviated the necessity for a *Holder* instruction. *Sundquist*, 128 Idaho at 781–82, 918 P.2d at 1226–27. Accordingly, the trial court did not err in refusing to give a *Holder* instruction.[1]

## C. Whether The Trial Court's Instructions On Constructive Possession Accurately State The Law

Silva argues that the trial court's jury instruction invited the jury to find Silva guilty for having knowing possession and control of the vehicle in which the drugs were found and that his proposed instruction was a more definitive statement of the law of constructive possession.

Because the methamphetamine was found under the floor mat of the driver's seat of Silva's truck, Idaho law required the state to establish constructive possession; in other words, that Silva knew of the drugs and had the power and intention to control them. *State v. Seitter*, 127 Idaho 356, 359, 900 P.2d 1367, 1370 (1995). Control of the premises in which the drugs are found has often been used to infer knowledge. *State v. Warden*, 97 Idaho 752, 754, 554 P.2d 684, 686 (1976).

Here, the trial court gave the same three jury instructions approved of under analogous circumstances in *Rozajewski*, 130 Idaho at 646, 945 P.2d at 1392. Viewed as a whole, the instructions fairly and accurately reflected the law of constructive possession and did not invite the jury to find Silva guilty based solely on his possession or ownership of his truck. Thus, the trial court did not err in refusing Silva's proposed constructive possession instruction.

## V.

## CONCLUSION

The trial court correctly denied Silva's motion to suppress evidence and the rejection of his proposed jury instructions was not reversible error. Accordingly, Silva's conviction for possession of a controlled substance, methamphetamine, is affirmed.

Chief Judge PERRY and Judge LANSING concur.

---

1. We note that a unanimous Idaho Supreme Court recently overturned *Holder* and its progeny. *State v. Humpherys*, 134 Idaho 657, 8 P.3d 652 (2000).