187 P.3d 1261

**STATE of Idaho**

v.

**Jesus RAMIREZ.**

No. 32387.

Court of Appeals of Idaho.

June 11, 2008.

Fred R. Palmer, Sandpoint, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

GUTIERREZ, Chief Judge.

Jesus Ramirez appeals from his judgment of conviction for felony possession of marijuana. Specifically, he challenges the denial of his motion to suppress evidence, arguing his traffic stop was unlawfully extended. We affirm.

## I.

## BACKGROUND

On November 20, 2003, Idaho State Police Trooper Kevin Bennett observed a van traveling at seventy-three miles-per-hour in a sixty mile-per-hour zone. There were no license plates on the van. After being stopped, Ramirez identified himself using a Montana driver's license. Ramirez told the trooper that he was traveling from Libby, Montana, to Kennewick, Washington, to deliver the van to a friend in the Tri–Cities area. The van actually had been sold to Sergio Venitez, Ramirez's friend in Kennewick, that same day in Montana; Ramirez had documents to verify the sale. A temporary permit was displayed in the back window of the van. Ramirez initially told Trooper Bennett that Venitez had purchased the van and Ramirez was driving it to Kennewick without being compensated for his time. He later clarified that he had purchased the van for Venitez and Venitez was going to reimburse him upon delivery.

According to Trooper Bennett's subsequent testimony, he noticed several fast food containers on the floor of the car, as well as a cell phone and packaging for a new cell phone car charger. His suspicions aroused, Trooper Bennett asked Ramirez how many pounds of methamphetamine he was transporting. Ramirez responded that he had "none" and looked directly at Trooper Bennett. When asked this same question with regards to cocaine and heroin, his response was the same. However, when asked how much marijuana he was transporting, Ramirez looked away from Trooper Bennett, crossed his arms, and answered "none" in a lower, raspy voice. Trooper Bennett then returned to his patrol car to verify the status of Ramirez's driver's license and to make sure that the van had not been reported stolen in Montana. Trooper Bennett first requested that an officer from Bonners Ferry City Police respond to the location along with his partner, a drug detection dog. He then requested the records check on Ramirez's driver's license. While looking at the sales paperwork provided by Ramirez, Trooper Bennett discovered a death certificate attached to the receipt of sale and title. Concerned by this, Trooper Bennett also requested a phone number for the dealer who sold the van in Montana. Trooper Bennett approached Ramirez a second time to inquire about the extra documents in the sales paperwork, and then returned to his patrol car to complete citations for speeding and failure to carry proof of insurance.

Nearly fifteen minutes after requesting the records check, and approximately twenty minutes after the initial stop, Trooper Bennett was informed that there were no problems with Ramirez's record in Montana. Trooper Bennett was subsequently informed that he had all the information dispatch could provide regarding the certificate of death from Montana. The drug dog had not yet arrived. Roughly seven minutes later, Trooper Bennett motioned for Ramirez to step out of the van and approach the back of the vehicle to discuss the citations. A minute later, Officer Minor from the Bonners Ferry Police arrived on the scene with his drug detection dog and began circling the van while Trooper Bennett explained the cita-

tions to Ramirez. Trooper Bennett issued the citations and returned Ramirez's license and sales paperwork. Ramirez was informed that he would be free to leave after Trooper Bennett explained how to pay the tickets, which he then did. Without turning off his overhead emergency lights, or informing Ramirez that the stop was concluded or that he could re-enter his vehicle, and while Officer Minor was still circling the van with his drug dog, Trooper Bennett asked Ramirez if he could search the van. Ramirez initially denied consent, because the van did not belong to him. Trooper Bennett explained that Ramirez was in possession of the van, and could therefore consent. This time Ramirez acquiesced to the request. Officer Minor opened the driver's side door of the van and allowed his dog to sniff inside. He then proceeded around the van and opened the sliding door, at which time the dog alerted to the presence of narcotics. Trooper Bennett joined Officer Minor by the open door of the van, and noticed the odor of green marijuana coming from inside. Ramirez was arrested after the officers located a bundle of marijuana hidden inside a box with an air conditioner.

Ramirez was charged with possession of a controlled substance with the intent to deliver, I.C. § 37–2732(a)(1)(B). He filed a motion to suppress the evidence obtained as a result of the traffic stop, contending that Trooper Bennett illegally extended the duration of the stop. The district court denied the motion and Ramirez entered a conditional guilty plea to possession of marijuana, more than three ounces, a felony, I.C. § 37–2732(e), reserving the right to appeal the denial of his motion to suppress.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v.*

*Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

### DISCUSSION

Ramirez urges this Court to suppress the evidence seized as a result of the traffic stop because Trooper Bennett illegally extended the duration of the stop by asking questions about drugs, waiting for the drug dog to arrive, and seeking Ramirez's consent to search the van. The state contends that the extension of the stop was lawful due to Trooper Bennett's reasonable and articulable suspicion of drug activity. Furthermore, the state asserts that the extension was necessary to complete the purpose of the traffic stop, and Officer Minor arrived during the process of completing the stop. Therefore, according to the state, there was no delay by Trooper Bennett.

The Fourth Amendment to the United States Constitution guarantees every citizen the right to be free from unreasonable searches and seizures. *State v. Salois,* 144 Idaho 344, 347, 160 P.3d 1279, 1282 (Ct.App. 2007); *State v. Cerino,* 141 Idaho 736, 737, 117 P.3d 876, 877 (Ct.App.2005). Its purpose is "to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to 'safeguard the privacy and security of individuals against arbitrary invasions.'" *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979) (quoting *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978)). The stop of a vehicle constitutes a seizure of its occupants and is therefore subject to Fourth Amendment restraints.[1] *Prouse* at 653, 99 S.Ct. at

1. Although Ramirez contends that both the Idaho and United States constitutions were violated, he

1395–96; *State v. Roark,* 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct.App.2004); *State v. Robertson,* 134 Idaho 180, 184, 997 P.2d 641, 645 (Ct.App.2000); *State v. Flowers,* 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct.App.1998); *State v. Sevy,* 129 Idaho 613, 614–15, 930 P.2d 1358, 1359–60 (Ct.App.1997); *Atkinson,* 128 Idaho at 561, 916 P.2d at 1286. Although a vehicle stop is limited in magnitude compared to other types of seizures, it is nonetheless a "constitutionally cognizable" intrusion and therefore may not be conducted "at the unbridled discretion of law enforcement officials." *Prouse,* 440 U.S. at 661, 99 S.Ct. 1391. Because a traffic stop is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Prouse,* 440 U.S. at 653, 99 S.Ct. 1391; *State v. Stewart,* 145 Idaho 641, 181 P.3d 1249 (Ct.App.2008).

Ramirez raises three specific challenges to the length of his detention. He asserts that Trooper Bennett extended the duration by asking Ramirez about the quantity of drugs he was transporting before checking the status of his driver's license, by waiting for a drug dog to arrive prior to issuing the citations and allowing the drug dog to circle the van several times, and by requesting consent to search the van.

■ An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct.App.2004); *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002). There is no rigid time-limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 1574–76, 84 L.Ed.2d 605 (1985); *State v. Soukharith,* 253 Neb. 310, 570 N.W.2d 344, 355 (1997). Where a person is detained, the

scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson,* 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App. 2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson,* 135 Idaho at 361, 17 P.3d at 305. However, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe,* 140 Idaho at 181, 90 P.3d at 931. Any routine traffic stop might turn up suspicious circumstances that could justify an officer asking further questions unrelated to the stop. *State v. Myers,* 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App.1990). The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *Id.* Accordingly, the length and scope of the initial investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Id.*

■ Ramirez's first challenge to the length of the stop addresses the questioning by Trooper Bennett as to matters unrelated to the stop. Typically, a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose. *Parkinson,* 135 Idaho at 363, 17 P.3d at 307. During the course of a lawful traffic stop, general questioning on topics unrelated to the purpose of the stop is permissible as long as it does not expand the duration of the stop. *Stewart,* 145 Idaho 641, 181 P.3d 1249; *see also Muehler v. Mena,* 544 U.S. 93, 101, 125 S.Ct. 1465, 1471–72, 161 L.Ed.2d 299 (2005); *Parkinson,* 135 Idaho at 363, 17 P.3d at 307. Brief, general questions about drugs and weapons, in and of them-

provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be differently applied in this case. Consequently, the Court relies on judicial interpretation of the Fourth Amendment in its analysis of Ramirez's claims. *See State v. Schaffer,* 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

selves, do not extend an otherwise lawful detention. *Parkinson,* 135 Idaho at 362–63, 17 P.3d at 306–07; *see also United States v. Yang,* 345 F.3d 650, 654 (8th Cir.2003); *State v. Aguirre,* 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct.App.2005).

■ In this case, neither party disputes the validity of the initial stop for speeding. During Trooper Bennett's first encounter with Ramirez, he asked Ramirez for his driver's license, registration, and proof of insurance. Trooper Bennett inquired into Ramirez's destination, where he was coming from, and the circumstances under which he came to be driving the van. These questions about destination and ownership were legitimately posed by Trooper Bennett to investigate the traffic stop. Trooper Bennett then asked Ramirez how many pounds of methamphetamine he was transporting and repeated the question as to marijuana, cocaine, and heroin. Although these additional questions about drugs were direct and specific, rather than general in nature, they were not impermissible. *Stewart,* 145 Idaho 641, 181 P.3d 1249 ("[U]nder current United States Supreme Court interpretation, when a suspect is otherwise being reasonably detained, the Fourth Amendment is not infringed by the officer's interrogating the suspect about possible criminal activity unrelated to the justification for the detention."); *see also United States v. Shabazz,* 993 F.2d 431, 436–37 (5th Cir.1993) ("[D]etention, not questioning, is the evil at which *Terry*'s second prong is aimed."); *State v. Wallace,* 251 Wis.2d 625, 642 N.W.2d 549, 554 (2002) ("[I]t is the extension of a detention past the point reasonably justified by the initial stop, not the nature of the questions asked, that violates the Fourth Amendment."). The period of time that passed while Trooper Bennett asked the four questions about drugs was a matter of seconds. Ramirez was lawfully detained at the time the questions were posed, and the additional time involved for the questions to be asked and answered was objectively reasonable. *See State v. Silva,* 134 Idaho 848, 853, 11 P.3d 44, 49 (Ct.App. 2000).[2]

■ Ramirez's second challenge to the length of the stop reflects his belief that Trooper Bennett intentionally delayed issuing the citations in order to allow time for Officer Minor to arrive with his drug dog and conduct a perimeter sniff of the van. However, the district court found that Trooper Bennett did not delay his investigation for Officer Minor's arrival. The United States Supreme Court has held that a drug dog sniff is not a search, and may be performed during a traffic stop without violating the Fourth Amendment. *Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 837–38, 160 L.Ed.2d 842 (2005); *see also Aguirre,* 141 Idaho at 563, 112 P.3d at 851. The Court emphasized that the stop was not lengthened by the use of the dog, and held that any intrusion on privacy interests did not "rise to the level of a constitutionally cognizable infringement." *Caballes,* 543 U.S. at 409, 125 S.Ct. 834. Similarly, in *Parkinson,* 135 Idaho at 363, 17 P.3d at 307, this Court found that an officer's questions regarding drugs, alcohol, and weapons, and running a dog around the perimeter of the vehicle while a second officer was writing and issuing citations did not violate the driver's privacy or Fourth Amendment rights. Once again, the focus of the court's analysis revealed that the stop was not lengthened by the use of the drug dog, thereby avoiding any Fourth Amendment violations. Our consideration therefore turns on whether there was any delay or lengthening of the stop.

The district court made the following findings of fact, to which we defer.

> There does appear to be three separate occasions where Officer Bennett did approach the defendant. There were questions concerning the vehicle, the possession of the vehicle, the title of the vehicle, the Certificate of Death as it related to the vehicle. And I cannot say and I do not find that the length of time necessary to address those issues as testified to by Officer Bennett was so extensive as to—as to

---

**2.** Our understanding that a person "may not be detained even momentarily without reasonable, objective grounds for doing so," *Florida v. Royer,*

460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983), applies to the basis for the initial stop, which is not disputed here.

be a stop that was longer than necessary to effectuate the purpose of the stop.

Approximately seven minutes after verifying Ramirez's driver's status and ownership of the van, Trooper Bennett approached Ramirez for the third time and motioned him to the back of the van. He then explained the citations to Ramirez and returned all of the paperwork. It was during the first moments of this process that Officer Minor arrived with his drug dog and began circling the van.

Although Ramirez contends that Trooper Bennett purposefully delayed issuing the citation until after Officer Minor arrived with his drug dog, the district court's finding to the contrary is supported by substantial evidence. The court questioned Trooper Bennett to clarify the precise sequence of his actions during the stop. The court also reviewed the audio and video recordings, along with the dispatch logs, in order to pinpoint the passage of time. The court then concluded that Trooper Bennett did not impermissibly delay writing the citations in order to wait for Officer Minor, nor did he impermissibly delay the process of issuing the citations in order to allow Officer Minor and his drug dog to conduct a sniff of the van's perimeter.

> Did he wait an additional [few] minutes until the drug dog showed up to complete the citation and then coincidentally approach the vehicle of Mr. Ramirez? I do not reach that decision and I cannot reach that conclusion under these circumstances based upon the evidence that has been presented and the testimony that has been presented.
>
> I do find that and I do accept the testimony of Officer Bennett that the completion of the citations was such that an additional time was necessary and that he did take additional time.

There is evidence to show that the time used by Trooper Bennett was necessary to complete his investigation into the ownership of the van, the unusual circumstances of the sale, and the fact that a death certificate was attached to the title. Evidence also supports the district court's finding that Trooper Bennett did not purposefully delay the process to wait for Officer Minor and the drug dog.

Therefore the use of the drug dog during the lawful duration of the traffic stop did not constitute an unlawful extension of that stop.

■ Ramirez's final contention is that Trooper Bennett unlawfully extended the duration of the stop by seeking consent to search the van and that his consent was consequently invalid. The district court found, however, that there was no unlawful extension of the stop, and therefore Ramirez's consent was valid when given. A mere brief request for consent to a search during or at the conclusion of an otherwise valid detention does not impermissibly extend a traffic stop. *Silva*, 134 Idaho at 853, 11 P.3d at 49 ("The additional second or two that [the officer] took to ask for consent and in which Silva replied in the affirmative was objectively reasonable.").

Because we affirm the district court's finding that Trooper Bennett's investigative activities and the use of the drug dog did not extend the duration of the traffic stop, we need not address whether the trooper's observations provided reasonable suspicion to extend the stop for investigation of possible drug possession.

## IV.

## CONCLUSION

The district court did not err in denying Ramirez's motion to suppress. The length of the investigatory detention was not unlawfully extended by Trooper Bennett asking questions about drug transportation or by allowing a drug dog to sniff the outside of Ramirez's van. Additionally, the brief request for consent to search during the valid detention did not impermissibly extend the traffic stop. Accordingly, Ramirez's judgment of conviction is affirmed.

Judge LANSING and Judge PERRY concur.