**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40171**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | 2013 Unpublished Opinion No. 770 |
| | ) | |
| **Plaintiff-Appellant,** | ) | Filed: November 26, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| **CHRISTOPHER LEE BROWN,** | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| **Defendant-Appellant.** | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Order granting motion to suppress, <u>reversed</u> and case <u>remanded for further proceedings</u>.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for appellant. Russell J. Spencer argued.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent. Sally J. Cooley argued.

_____

GRATTON, Judge

The State appeals from the district court's order granting Christopher Lee Brown's motion to suppress. We reverse.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Near midnight, an officer observed a van parked in a store parking lot in Coeur d'Alene, Idaho. A nontransparent plastic completely covered the van's rear window. The van idled in the parking lot for roughly ten minutes. The van matched the description of a vehicle from which drugs had allegedly been sold in the area. The officer observed the van, driven by Brown, leave the parking lot and drive in what the officer viewed as a somewhat eccentric or erratic route. Essentially, Brown drove in a circle around the store.

After following Brown around the block, the officer activated his emergency lights and initiated a traffic stop due to the nontransparent plastic covering the rear window. The officer

1

explained to Brown why he had pulled him over and then collected his license, registration, and insurance. The officer returned to his patrol car and ran Brown's information. Upon re-contacting Brown, the officer had him exit the van. The officer then asked Brown about his driving pattern. Brown explained that he lived on a street directly behind the store, but he was on the phone with a friend so he missed his turn. The officer found this answer unsatisfactory because after circling the block Brown had again passed the road that would have led to the street he lived on. Before returning Brown's license and registration, and before warning Brown about his rear window, the officer asked for consent to search the van. Brown responded that he could search, but he would not find anything illegal. The conversation lasted approximately thirty seconds from when Brown exited the van and when the officer asked for consent. The officer searched the van and found marijuana.

After his arrest, Brown sought to suppress the evidence discovered by the officer. The district court concluded the officer had a reasonable basis to stop the vehicle because of the nontransparent plastic covering the rear window. The consent was given without coercion and made knowingly and voluntarily. However, the consent was ultimately not valid because it was made during an unlawfully-extended traffic stop. The court reasoned that since the officer kept the license and paperwork in his hand, while taking thirty seconds to seek consent, the traffic stop was extended with no articulable reason other than for the officer to ask for consent to search the vehicle. Accordingly, the district court granted Brown's motion to suppress and subsequently dismissed the case. The State timely appeals.

## II.

### ANALYSIS

The State challenges the district court's conclusion that the length of Brown's traffic stop was unlawfully extended. The State also contends that if the stop was extended, reasonable suspicion existed to continue the encounter.[1] Brown responds that not only was the stop unlawfully extended, but he argues the district court erred in concluding the initial stop was lawful. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

---

[1] Because we hold the purpose of the stop was not completed when consent was requested, we need not answer whether reasonable suspicion existed to justify a continued detention.

2

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A.     The Initial Stop was Valid

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

Brown first contends that because the district court and the officer did not specifically identify the infraction code section Brown violated, the stop was unlawful. Brown has cited to no authority requiring that a district court cite the specific code section giving rise to the infraction during a motion to suppress hearing. The district court, however, relied on Idaho Code § 49-943 when it found that "there was reasonable and articulable suspicion that a traffic infraction was occurring; specifically being the plastic that was not able to be seen through on the rear window, but that was the basis for a traffic stop." The district court's legal conclusion is sufficient under the Fourth Amendment's objective analysis. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) (holding the relevant inquiry is the objective facts known to the officers, not the subjective code sections given to justify the seizure).

Brown also argues that because his vehicle was equipped with two side mirrors that the vehicle was not in violation of the statute since his clear view of the highway was not obstructed. Idaho Code § 49-943(1) requires that: "No person shall drive any motor vehicle with any sign, poster, or other nontransparent material upon the front windshield, side wings, or side or rear windows of the vehicle which obstructs the driver's clear view of the highway or any intersecting highway." Brown does not challenge the district court's factual finding that he could not see through the rear window; rather, he alleges that the statute only prohibits an obstructed view of the highway, which did not occur in this case because of his side mirrors. Idaho Code § 49-943 requires that a material upon the rear window not obstruct the clear view through the window, irrespective of the presence of side mirrors. Because the rear window in Brown's vehicle was completely covered with the nontransparent plastic, the officer had reasonable suspicion that Brown's view through the window was obstructed.

## B.    The Consent was Valid

The district court reasoned the stop was impermissibly extended because the purpose of the stop concluded when the officer returned to Brown's van with the license and registration. An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008); *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931(Ct. App. 2004). There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Ramirez*, 145 Idaho at 889, 187 P.3d at 1264. However, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931. During the course of the traffic stop, an officer may make routine inquiries regarding the driver's destination and purpose, general questions about drugs and weapons, and consent to search the vehicle. *See Ramirez*, 145 Idaho at 889-90, 187 P.3d at 1264-65; *State v. Silva*, 134 Idaho 848, 853, 11 P.3d 44, 49 (Ct. App. 2000).

In *Silva*, an officer stopped a truck for speeding. The officer informed the defendant of the reason for the stop, asked if there were any drugs or weapons in the truck, and then obtained the defendant's driver's license, registration, and insurance. The officer returned to the vehicle, checked the defendant's information, and began writing a citation for speeding. Based on past encounters with the defendant, the officer called for a cover unit as a safety precaution. After finishing the citation, the officer had the defendant exit and stand at the rear of the truck. The officer then spent roughly fifteen seconds explaining the citation to the defendant. With citation in hand, the officer asked for consent to search the truck. The defendant agreed and the search resulted in the discovery of methamphetamine. *Silva*, 134 Idaho at 851, 11 P.3d at 47. This court held the consent was given during a lawful traffic stop.

In holding the officer's conduct was lawful we noted:

> At the moment he asked for consent, [the officer] was holding the completed citation and [the defendant's] driver's documents in his hand. While the initial purpose of the traffic stop--to issue a citation--perhaps could have been completed at the time [the officer] sought and received permission to look through [the defendant's] vehicle, the fact that [the officer] did not immediately issue the citation and inform [the defendant] that he was free to leave before requesting consent is not dispositive.

*Id.* at 853, 11 P.3d at 49; *see Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) (rejecting Ohio's first-tell-then-ask rule under Fourth Amendment analysis).

In concluding Brown's detention was impermissibly extended, the district court relied on *State v. Gutierrez*, 137 Idaho 647, 51 P.3d 461 (Ct. App. 2002). In *Gutierrez*, the driver was stopped for speeding. The officer collected the driver's license and registration and returned to his patrol car. After checking the information, the officer returned to the vehicle and had the driver exit the vehicle. The officer then issued the driver a warning citation and returned the license and registration. Without indicating the driver was free to leave or turning off the overhead lights, the officer then asked three questions unrelated to the traffic stop that carried an accusatory tenor. These questions took approximately sixty to ninety seconds. The officer explained he continued the investigation because a passenger appeared nervous. The officer then requested and received permission to search the vehicle. The search led to the discovery of marijuana and drug paraphernalia. *Id.* at 649, 51 P.3d at 463.

In holding that the officer unlawfully extended the traffic stop, we explained the "original purpose for the detention of [the driver] and his passengers was to issue a warning or citation for

speeding, and that purpose was accomplished when [the officer] issued the warning." *Id.* at 652, 51 P.3d at 466. We distinguished *Silva*, emphasizing that "the officer [in *Silva*] requested consent to search a vehicle before the purpose of the stop--the issuance of a traffic citation--had been completed, and the request for consent to search could have lengthened the process only a second or two." *Gutierrez*, 137 Idaho at 652 n.1, 51 P.3d at 466 n.1.

Here, the purpose of the stop continued when the officer asked the defendant to exit the vehicle. The officer had not returned Brown's license or registration, had not given Brown the warning regarding the rear window, and the officer reasonably wanted to inquire about Brown's driving pattern. This Court is unable to find any evidence in the record to support the conclusion of law that the purpose of the stop ended immediately upon the officer returning to Brown's van. Like in *Silva*, the fact that the officer could have issued the warning immediately upon returning to Brown's van is not dispositive. The touchstone of "the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). It is reasonable for an officer to make brief routine inquiries during a lawful traffic stop. While Brown was lawfully stopped, the officer could permissibly have Brown exit the vehicle, ask about the defendant's driving pattern, and request for consent. The district court erred in finding that consent was given during an unlawful extension of the stop because the purpose of the stop was not completed when the officer asked Brown for consent to search his vehicle.

### III.

### CONCLUSION

The officer had reasonable suspicion to stop Brown. During this lawful detention the officer permissibly requested consent to search the vehicle. Brown's voluntary consent allowed the officer to search the vehicle. The district court's order granting Brown's motion to suppress is reversed and the case is remanded for further proceedings.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

6