**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48645**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 9, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| KAYCEE CLAIR COLE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Franklin County. Hon. Mitchell W. Brown, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Pitcher & Holdaway; Ryan L. Holdaway, Logan, Utah, for appellant. Ryan L. Holdaway argued.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent. Andrew V. Wake argued.

_____

LORELLO, Chief Judge

Kaycee Clair Cole appeals from a judgment of conviction for possession of a controlled substance. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer stopped Cole one evening for traffic offenses and obtained his driver's license, registration, and proof of insurance. After checking Cole's identification against law enforcement databases, the officer returned Cole's documents to him. Cole then apologized for his driving pattern, indicating that he would "be more careful." The officer responded by saying, "Yeah, you're good," and then asked whether he could "talk to [Cole] for a second?" Cole agreed and conversed with the officer about Cole's reputed involvement with controlled substances.

1

Eventually, Cole consented to a search of his vehicle, which yielded a methamphetamine pipe made from a light bulb.

The State charged Cole with possession of methamphetamine. I.C. § 37-2732(c)(1). Cole moved to suppress the evidence obtained during the roadside search and an alleged subsequent search at the local sheriff's office.[1] The district court denied the motion, concluding Cole had: (1) authorized the roadside search of his vehicle during a consensual encounter with the officer after the conclusion of the traffic stop; and (2) presented no argument or evidence regarding the alleged second search. Cole entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. Cole appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Cole argues that the district court erred by denying his motion to suppress because an unlawful extension of the traffic stop tainted his consent to the roadside search of his vehicle.[2] The

---

[1]    It is unclear whether the possession of methamphetamine charge arose from methamphetamine residue on the light bulb or other controlled substances discovered during the alleged second search of his vehicle.

[2]    Cole's opening brief contains no argument or authority asserting that the district court erred by denying his motion to suppress in relation to the alleged second search of his vehicle at the sheriff's office. Despite acknowledging the State's argument that this defect resulted in the waiver of any issue related to the alleged second search, Cole's reply brief contains no substantive

2

State responds that the district court correctly determined that Cole authorized the search during a consensual encounter with the officer after the traffic stop concluded. We hold that Cole was not detained when he consented to the search of his vehicle and, therefore, has failed to show error in the denial of his motion to suppress.[3]

Cole acknowledges that his argument turns on whether the traffic stop transformed into a consensual encounter when the officer returned Cole's documents, said he was "good," and asked to speak with him briefly. A traffic stop may evolve into a consensual encounter if the officer returns the driver's license, registration and insurance documents, and makes no further show of authority that would convey a message that the individual is not free to go. *State v. Roark*, 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct. App. 2004). The ultimate focus of the inquiry is whether, under the totality of the circumstances, "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991).

The district court concluded that Cole voluntarily authorized the search of his vehicle during a consensual encounter with law enforcement after the conclusion of a lawful traffic stop. In reaching this conclusion, the district court found that the officer lawfully stopped Cole for speeding and failing to maintain his lane. After obtaining Cole's license, registration, and proof of insurance, and confirming the validity of Cole's license, the officer returned Cole's documents and the following exchange occurred:

| | |
|---|---|
| Officer: | Alright [Cole], here's your stuff, man. |
| Cole: | [S]orry about that officer, I'll be more careful. |
| Officer: | Yeah, you're good. Um, can I talk to you for a second? |

response. Consequently, Cole has waived any issue related to the alleged second search. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

[3] Cole's statement of issues presented on appeal indicates that his "detention was unconstitutionally prolonged under the Fourth Amendment . . . and pursuant to Article I, Section 17 of the Idaho Constitution." However, Cole provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Cole's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

The district court further found that Cole verbally agreed to the officer's request, spoke with the officer about Cole's alleged involvement with controlled substances, and then consented to a search of his vehicle. The search yielded a methamphetamine pipe made from a light bulb. Although the emergency lights on the officer's patrol vehicle remained activated when Cole agreed to talk to the officer and consented to the search of the vehicle, the district court determined that this did not "interject an assertion of authority" into the officer's exchange with Cole, which otherwise "clearly demonstrated" the investigatory detention was complete and that "Cole was free to go about his business." In support of this determination, the district court interpreted the words "alright" and "you're good," in conjunction with returning Cole's documents, as "dismissive and concluding in nature," signifying the conclusion of the traffic stop. The district court further reasoned that the emergency lights remained on for "safety purposes" as it would "seriously jeopardize the safety of both [the officer] and Cole" to conduct a search at night with the lights off. The district court concluded that "a reasonable person in Cole's position would have interpreted [the officer's] brief comments, casual demeanor, non-aggressive and conversational tone as an invitation to engage in further discussion." Consequently, the district court found the traffic stop had "transformed into a consensual encounter" when Cole authorized the search of his vehicle.

Cole argues that his detention continued beyond the return of his documents and the officer's request to speak with Cole further because the officer's "series of ambiguous statements . . . was simply not clear enough to overcome the show of authority exhibited by the officer's overhead lights" and close proximity to Cole's vehicle while requesting permission to search. We disagree.

An officer's continued use of the emergency lights on a patrol vehicle after initiating a seizure generally suggests that the seizure is ongoing. *See State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). That does not, however, necessarily mean that a traffic stop cannot transform into a consensual encounter while a patrol vehicle's lights remain activated. *See Roark*, 140 Idaho at 871, 103 P.3d at 484. According to Cole, *State v. Henage*, 143 Idaho 655, 659, 644, 152 P.3d 16, 20, 25 (2007) (plurality), and *Roark* require officers to expressly instruct drivers using "clear, unambiguous, and unequivocal" language that they are no longer detained to terminate a traffic stop while the lights of a patrol vehicle remain activated. Cole's argument

4

mistakes a condition these cases identify as *sufficient* to terminate a traffic stop for one that is *necessary*. An express statement by an officer that a detainee is free to go is unnecessary to terminate a traffic stop. *See Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996) ("emphasizing the fact-specific nature of the reasonableness inquiry" under the Fourth Amendment and concluding it would "be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary"). We do not read either *Henage* or *Roark* as requiring more of officers to terminate a traffic stop while the lights of a patrol vehicle remain activated. Rather, the cases recognize that no reasonable person who *was* unequivocally instructed that he or she may go would disregard such a statement due to the emergency lights on a patrol vehicle--not that such unequivocal instruction is necessary to terminate a traffic stop. *See Henage*, 143 Idaho 655, 152 P.3d 16; *Roark*, 140 Idaho at 871, 103 P.3d at 484.

Cole also argues the officer's use of the words "alright" and "you're good" were ambiguous and would not have informed a reasonable person the stop had concluded, but Cole makes this argument by considering each statement in isolation and disregarding certain findings by the district court. According to Cole, the officer's use of "alright" was "a salutary phrase" to get Cole's attention that "did not purport to have to do with the entirety of the stop nor would any listener assume as much." Cole further contends that the officer's statement "you're good" was only a response to Cole's apology for his driving pattern and that nothing could be gleaned from the statement other than that he "was not necessarily in trouble" for traffic violations. Parsing the officer's exchange with Cole in this manner fails to consider the officer's statements in light of the totality of the circumstances. When considered in context, the officer's statements indicate that the stop had concluded. The officer's statement "you're good" came shortly after Cole received his documents back from the officer and was followed by a request for permission to talk further. Cole acknowledges that the officer's indication that Cole was "good" indicated that he was not "in trouble" for his traffic violations. In other words, the statement indicated that the officer did not intend to seek to penalize Cole for his driving. The officer's subsequent request for *permission* to converse further would make little sense to a reasonable person, unless he or she were free to decline and terminate the encounter. A reasonable person stopped for traffic offenses who just obtained his or her documents back from an officer, received an indication that no penalty for the announced purpose of the stop (*i.e.*, the traffic offense) was forthcoming, and was then asked for

5

permission to talk further would believe the traffic stop had concluded, despite the continued activation of the patrol vehicle's emergency lights.[4] *See United States v. Gigley*, 213 F.3d 509, 514 (10th Cir. 2000) (holding that, after termination of a traffic stop, a defendant's decision to grant an officer permission to "ask [the defendant] some questions" initiated a consensual encounter).

Cole's contention that a reasonable person would not have felt free to leave due to the officer's allegedly close physical proximity is similarly unavailing. The district court did not find that the officer blocked Cole from leaving, touched his vehicle, or engaged in any other coercive conduct.[5] The absence of such findings, despite the assertion below that the officer was unusually close to Cole's vehicle, suggests that the district court rejected Cole's version of the facts regarding the officer's proximity to Cole's vehicle. That the district court found that the officer was "extremely polite and courteous throughout the duration of the detention and consensual encounter" further supports this conclusion. Moreover, the officer's bodycam video, which was admitted during the suppression hearing as an exhibit, does not indicate that the officer stood so close to the driver's side of Cole's vehicle that "it would have been reckless for [him] to attempt to leave" as he asserts, much less decline the officer's request to talk further. Even considered in combination with the emergency lights, the officer's natural proximity to Cole's vehicle did not constitute a show of authority that continued his detention beyond the return of his documents.

---

[4]    Moreover, even if the traffic stop had not terminated, it is not clear that Cole's consent would have occurred during an unlawful extension of the stop. Officers can request permission for and conduct the *search* of a vehicle during an investigatory detention without violating the Fourth Amendment. *See State v. Silva*, 134 Idaho 848, 853, 11 P.3d 44, 49 (Ct. App. 2000). This principle logically extends to an officer obtaining a detainee's consent to converse about subjects unrelated to the underlying purpose of a traffic stop.

[5]    The absence of such a factual finding distinguishes this case from *State v. Moore*, 154 P.3d 1 (Kan. 2007), which Cole cites in support of his argument that he was subject to a continued detention. In *Moore*, the Kansas Supreme Court concluded that Moore's detention continued beyond the return of his license and registration while a physically imposing officer, supported by a second armed officer, "alternat[ed] between leaning on and nearly touching the frame" of Moore's vehicle. *Id.* at 9.

In sum, the facts found by the district court, considered in light of the totality of the circumstances, support the conclusion that the traffic stop transformed into a consensual encounter during which Cole consented to a search of his vehicle. Accordingly, Cole has failed to show error in the denial of his suppression motion.

## IV.
## CONCLUSION

The district court correctly concluded that Cole authorized a search of his vehicle during a consensual encounter with an officer after the conclusion of a traffic stop. Consequently, Cole has failed to show that his consent to search was tainted by an unlawful detention. Accordingly, Cole's judgment of conviction for possession of a controlled substance is affirmed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.