# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40999

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 65 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: October 14, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DORIS NEPA HAYS, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded for further proceedings</u>.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for appellant. Russell J. Spencer argued.

Sara B. Thomas, State Appellate Public Defender; Kimberly E. Smith, Deputy Appellate Public Defender, Boise, for respondent. Kimberly E. Smith argued.

---

GRATTON, Judge

The State appeals from the district court's order granting Doris Nepa Hays' motion to suppress. The district court determined that the officers unlawfully extended the duration of Hays' traffic stop and violated her *Miranda*[1] rights.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At 11:30 p.m., Ponderay City Police Officer Brian Koch stopped Hays for exceeding the speed limit. Upon making contact, Officer Koch noticed that Hays appeared to be very nervous. He asked her questions about her nervousness and destination. Hays provided Officer Koch with her driver's license and registration, but she did not have proof of valid insurance. Officer Koch

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

informed Hays that although he was not going to cite her for speeding, he would give her a citation for failure to show proof of valid insurance and that the citation could be dismissed upon production of proof of insurance. Officer Koch returned to his patrol car to conduct a license check and issue a citation. However, he first called Bonner County Sheriff's Deputy Darren Osborn to request a drug dog.

Approximately seven minutes into the stop, the driver's license check revealed that Hays had a valid and clear license. Officer Koch testified that he then began to write the citation but before Deputy Osborn arrived on scene, Officer Koch noticed movement within Hays' vehicle and for his safety, he activated his search light and continued surveillance on the vehicle while he processed the citation. Approximately ten minutes into the stop, Deputy Osborn arrived on scene and was told by Officer Koch that the driver was unusually nervous. Deputy Osborn then engaged in conversation with Hays where he asked her if there were drugs in the car. She then admitted to having marijuana in her car. Thereafter, Hays handed Deputy Osborn a plastic bag containing marijuana and he placed it on the roof of Hays' car.

Approximately fourteen minutes into the stop, Officer Koch re-approached Hays' vehicle and asked her to exit and stand near his patrol car. Officer Koch explained the citation to Hays and told her that he called for a drug dog because she was acting nervous. Meanwhile, Deputy Osborn walked the drug dog around Hays' car and the dog alerted as to the presence of drugs. During a subsequent search of the vehicle, Officer Koch discovered methamphetamine.

Hays was arrested and charged with possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c)(1). She filed a motion to suppress the evidence obtained during the traffic stop, arguing that that the stop was unlawfully extended and her *Miranda* rights were violated when she was questioned during the stop. The district court granted the motion, finding that although the initial stop of Hays was lawful, her detention was impermissibly extended in violation of the Fourth Amendment. In particular, the district court determined that (1) the initial questions posed by Officer Koch regarding Hays' destination and the basis for her nervousness unreasonably extended the stop, and (2) Officer Koch unreasonably delayed the processing of the citation in order to facilitate the dog sniff. Further, the court found that Hays was in custody when she made incriminating statements to Deputy Osborn, thus resulting in a violation of her *Miranda* rights. The State appeals.

2

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

### A.     Extension of the Traffic Stop

Neither party disputes the validity of the initial stop for speeding. However, the State challenges the district court's conclusion that the length of Hays' traffic stop was unlawfully extended. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

#### 1.     Officer Koch's initial interaction with Hays

In her motion to suppress, Hays did not assert that the questions initially asked of her by Officer Koch unlawfully extended the stop, only that they did not result in information sufficient to support a reasonable suspicion necessary to begin a drug investigation. However, the district court found that this questioning was unrelated to the purpose of the stop and resulted in an unlawful extension of the stop. We will, therefore, address this determination.

The chronology of events according to the district court's review of the tape of the stop include:

> **0:00 min:** Koch stops the vehicle.
> **1:42 min:** Koch contacts the driver and explains the reason for the stop. Koch engages in a conversation with the driver about why she is upset. The driver claims that she is upset because she is having trouble with her boyfriend.
> **2:25 min:** Koch requests her driver's license, insurance, and registration. The license identifies the driver as the Defendant, Doris Nepa Hays. Koch engages in another conversation about where Hays lives and where she is going.
> **3:40 min:** Koch asks Hays for proof of insurance.
> **4:00 min:** Hays produces her registration.
> **4:15 min:** Koch converses with Hays about her lack of proof of insurance.

3

As to these activities the district court stated:

> In this case, in order to justify the extension of the stop, Officer Koch must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion [upon the privacy and liberty of Hays]." [*State v.*] *Sheldon*, 139 Idaho [980,] 984, 88 P.3d [1220,] 1224 [(Ct. App. 2003)]. At the suppression hearing, Koch stated that Hays was nervous, her hands were shaking, her eyes were dilated, and she exited the highway rather than driving directly to where she claimed she was going. Koch inquired extensively of Hays why she was nervous, where she was going, where she lived, the name of who she was going to see and whether he was the reason she broke up with her boyfriend. These questions were unrelated to the purpose of the stop, and Koch's testimony failed to persuade the Court that there were suspicious circumstances which justified asking those questions and reasonably warranted an expansion of the length and scope of the stop.

An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008).

First, the district court appears to have combined the conversation from 1:42 to 2:25 (forty-three seconds), regarding nervousness, with the conversation from 2:25 to 3:40 (one minute fifteen seconds), in which the officer asked for Hays' license, registration, and insurance. In addition to determining whether to issue a traffic ticket, an officer's mission ordinarily includes inquiries incident to the stop, which typically involve "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1615 (2015); *see also Parkinson*, 135 Idaho at 363, 17 P.3d at 307. The one-minute-fifteen-second portion of the conversation occurred while Hays was attempting to locate these items and in fact, she produced her license and registration during this time. Other

4

than asking for the license, registration, and insurance and apparently reviewing the license, the district court described the further discussion as: "Koch engages in another conversation about where Hays lives and where she is going." However, prior case law permits an officer to routinely ask about a driver's purpose and destination. *Parkinson*, 135 Idaho at 363, 17 P.3d at 307.

Typically, general questioning on topics unrelated to the purpose of the stop is permissible only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'--to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1614 (internal citation omitted).

As noted, the district court determined that Officer Koch "inquired extensively" of Hays' nervousness and her traveling purposes. However, this conversation occurred in the span of about forty-three seconds and included some discussion regarding the purpose of the stop. More importantly, the officer encountered a driver who, by her own admission,[2] was obviously nervous, which the district court termed "apparent hypersensitivity." The officer's inquiry into Hays' nervousness, whether related to officer safety, Hays' safety, or the safety of the highways, did not violate Hays' Fourth Amendment rights. *See Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1616 (the mission of a traffic stop is "to address the traffic violation that warranted the stop and attend to related safety concerns").

### 2. Officer Koch's interaction with the canine unit

Below, Hays claimed that Officer Koch extended the stop when "Koch delayed his investigation of a minor traffic infraction on two occasions to work with Osborn on a drug investigation." Hays argued that the initial occasion was when Officer Koch called for the drug dog and that the second occasion was when Deputy Osborn arrived on the scene and had a

---

[2]     The district court noted:

> Hays testified that she is a nervous person and has consulted with [a physician] for psychological assessments. She testified that she is afraid of men in authority, due in part to growing up in an abusive home; she has had restraining orders issued against men; she has requested restraining orders that have not been issued; she just left an abusive relationship a day before, and is in fear of the abuser; that she suffers from attention deficit disorder, anxiety, depression and low self-esteem, and that she finds it difficult to stay on task.

conversation with Officer Koch regarding the situation. Finally, Hays claimed that Officer Koch delayed finishing the citation after Deputy Osborn placed the marijuana on the roof of Hays' car to "wait and see" what the results of Deputy Osborn's efforts regarding contraband might yield.

The district court determined:

> The next question is when was the purpose of the stop fulfilled? By 6:48 minutes into the stop, the driver's license check had revealed that Hays had a valid and clear license. Koch testified that, at this point, he had all of the information he needed and began to write the citation. Instead of completing and delivering the citation, however, he sits in his vehicle and waits until nearly 10:00 minutes into the stop for Osborn to arrive with the drug dog. In fact, he radioed Osborn even before he called for the license check. He then continues to wait in his car until 13:31 minutes into the stop--after Hays has handed the marijuana to Osborn--to exit his vehicle. The citation is finally delivered to Hays at 14:51 minutes into the stop, along with her registration, but Koch holds onto the license. The purpose of the stop, ascertained after contact was made with Hays, was to cite her for failure to show proof of insurance. The citation could and should have been delivered right after Koch spoke with the dispatcher, and not delayed until the completion of the drug investigation by Osborn. Because Osborn "questions a driver about matters unrelated to the traffic stop after the purpose of the stop has been fulfilled, the questioning, no matter how short, extends the duration of the stop and is an unwarranted intrusion upon the privacy and liberty of the vehicle's occupants." [*State v. ]Bordeaux*, 148 Idaho [1,] 8, 217 P.3d [1,] 8 [Ct. App. 2009)].

Recently, in *Rodriguez*, the United States Supreme Court reviewed the issue of whether a police officer may extend an otherwise completed traffic stop to conduct a dog sniff. The Court noted that while an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop. . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at ____, 135 S. Ct. at 1615. The Court noted that a dog sniff, which is aimed at detecting evidence of criminal wrongdoing, is not an ordinary element of a traffic stop and cannot be fairly characterized as part of the officer's mission. *Id.* "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id.* at ___, 135 S. Ct. 1614 (internal citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are--or reasonably should have been--completed." *Id.* Thus, in the context of a dog sniff, the Court determined that "the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'--*i.e.*, adds time to--'the stop.'" *Id.* at ___, 135 S. Ct. at 1616. In so holding, *Rodriguez* specifically rejected the

6

government's argument that an officer may prolong a traffic stop to conduct a non-traffic-related task "so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of other traffic stops involving similar circumstances." *Id.*

If we agree with the district court that Officer Koch intentionally delayed completing the traffic citation to conclude the dog sniff, our inquiry is at an end. *See State v. Ramirez*, 145 Idaho 886, 890, 187 P.3d 1261, 1265 (Ct. App. 2008). Also, if we conclude that the activities related to the dog sniff prolonged the stop, our inquiry is at an end. *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1616. We address each in turn.

The first question, then, is whether there is substantial evidence in the record supporting the district court's findings of intentional delay. Although the district court found that Officer Koch purposefully delayed issuing the citation until after Deputy Osborn arrived with his drug dog and questioned Hays, this finding is not supported by the record. At the suppression hearing, Officer Koch testified as to the precise sequence of his actions during the stop. The court also viewed the audio and video recordings in order to pinpoint the passage of time. We first note that the district court incorrectly concluded that the purpose of the traffic stop was fulfilled "right after [Officer] Koch spoke with the dispatcher." The record reveals that Officer Koch did not begin writing the citation until he had concluded his conversation with the dispatcher. Officer Koch testified that less than five minutes after beginning to write the citation, and after taking time to shine his spotlight on Hays' vehicle to ensure his safety, he was "just about at the very bottom of the citation filling in the court date." Forty-three seconds after Officer Koch indicated that he was filling in the court date, Hays handed Deputy Osborn a plastic bag containing marijuana and Deputy Osborn then placed it on the roof of Hays' car. However, Officer Koch further testified that even after filling in the court date, the citation was not yet complete. In order to complete the citation, Officer Koch had to sign it with his officer identification number, indicate that it had been served on Hays, indicate the date he served it, and place a clerk of court decal on the back of the citation. Officer Koch testified that it takes one to two minutes to conclude those portions of the citation after filling in the court date. It was while Officer Koch was completing these notations on the citation that Hays handed Deputy Osborn the bag of marijuana. He had to then collect his things and the citation and re-approach the driver. The district court's determination that Officer Koch "could and should have" delivered

the citation to Hays "right after [he] spoke with the dispatcher" is not supported by substantial evidence in the record.

The district court also found that after gathering the information necessary to start the citation, Officer Koch "sits in his vehicle and waits until nearly 10:00 minutes into the stop for Osborn to arrive with the drug dog" and that "he then continues to wait in his car until 13:31 minutes into the stop--after Hays has handed the marijuana to Osborn--to exit his vehicle." As to the first ten minutes of the stop, Officer Koch's activities included talking with Hays, talking with the dispatcher, and monitoring Hays' movements in her car with his searchlight. There is no evidence in the record that Officer Koch was not continuing to process the citation while waiting for Deputy Osborn to arrive with the drug dog. Rather, the evidence demonstrates not only that Officer Koch was actively pursuing the citation before Deputy Osborn arrived, but also that Officer Koch worked to complete the citation while Deputy Osborn questioned Hays regarding drugs, which he was permitted to do. *See Parkinson*, 135 Idaho at 363, 17 P.3d at 307. The record does not support a finding that Officer Koch merely sat in his vehicle instead of pursuing the citation. Because Officer Koch was still in the process of writing the citation, and had not yet issued the citation to Hays while Deputy Osborn was questioning her, the purpose of the stop had not yet been fulfilled.

Not only had the initial purpose of the stop--citing Hays for her failure to show proof of insurance--not yet been fulfilled, but the purpose of the stop transformed to a drug investigation upon Hays' admitting possession of marijuana and surrendering it to Deputy Osborn. The purpose of a stop is not permanently fixed at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop. *Parkinson*, 135 Idaho at 362, 17 P.3d at 306. Through her admission, Hays herself established probable cause that the vehicle contained drugs, effectively extending the duration of the stop. Because Hays made this admission before the purpose of the stop had been fulfilled, i.e., prior to Officer Koch reasonably concluding issuance of the citation, the initial purpose of the stop transformed from a traffic violation to a drug investigation.

Accordingly, the only remaining question, in light of *Rodriguez*, is whether Officer Koch's actions in requesting a drug dog and speaking to Deputy Osborn upon his arrival added time to the stop before the purpose of the stop transformed. It took Officer Koch approximately fifteen seconds to request the drug dog, and he spoke with Deputy Osborn for approximately

8

forty-one seconds upon Deputy Osborn's arrival. Accordingly, Hays argues that Officer Koch's actions prolonged the length of the stop by fifty-six seconds. Hays asserts that "the question before this Court is not whether Officer Koch could reasonably write and deliver a ticket to Ms. Hays in the time before she handed the marijuana to Deputy Osborn[], but rather whether Officer Koch's actions in obtaining the drug dog and pursuing drug investigation 'add[ed] time to the stop.' *Rodriguez*, 575 U.S. at [___, 135 S. Ct. 1616]."[3]

The State contends that Hays has failed to cite "any authority (and the state is aware of none) holding that the mere radioing for a drug dog constitutes an unreasonably [sic] delay of a traffic stop or that advising other officers who arrive on scene about the situation and the investigative measures which have been taken and which should be taken constitutes an unreasonable delay of a traffic stop." However, while calling for a drug dog and interacting with other officers on the scene is not uncommon, Hays argues that *Rodriguez* itself sets forth a limitation on these activities. That is, *Rodriguez* represents a clear intention of the United States Supreme Court to treat dog sniffs (a wholly independent investigation than the traffic stop) differently from other questioning. The *Rodriguez* Court acknowledged that in both *Illinois v. Caballes*, 543 U.S. 405 (2005) and *Arizona v. Johnson*, 555 U.S. 323 (2009), it "concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention." *Rodriguez*, 575 U.S. at ___, 135 S. Ct. 1614. The *Rodriguez* Court specifically addressed the acceptability of inquiries involving driver's license, registration, warrants, and proof of insurance, which it related to highway safety, and more generally, officer safety matters. The Court described these as "different in kind" from a dog sniff which is not fairly characterized as part of the officer's traffic mission. *Id*. at ___-___, 135 S. Ct. at 1615-16. Thus, whatever may fall within the ambit of acceptable unrelated questions, a dog sniff is an independent investigation that, absent reasonable suspicion, may not extend the traffic stop.

Next, the State argues that even considering Officer Koch's actions of requesting the drug dog and advising Deputy Osborn of the basis of the request when he arrived on scene, Hays has

---

[3] We note that the district court focused its determination on finding that Officer Koch intentionally delayed completing the citation, as discussed above. In doing so, the district court did not expressly conclude that Officer Koch unlawfully extended the stop by calling for the drug dog or conversing with Deputy Osborn. Unquestionably, the fifty-six seconds of dog-sniff-related activity extended the stop, i.e., the time necessary to complete the citation; the question is whether it *unlawfully* extended the stop.

failed to show that the fifty-six seconds necessary to complete these activities extended the stop beyond the time necessary to fulfill the mission of the stop. The State asserts that under *Rodriguez*, "the lawful duration of a traffic stop is the shorter of either (1) when the tasks tied to the infraction are actually completed, or (2) when those tasks reasonably should have been completed." The State initially contends that if we disagree with the district court as to the purposeful delay by Officer Koch, as discussed above, then the actual time of completion of the citation should be utilized as the time necessary to complete the mission. Since the marijuana was produced before the citation was actually completed, there was no unlawful extension of the stop. This argument fails to take into account the fact that Officer Koch engaged in dog-sniff-related activities unrelated to the purpose of the stop.

Alternatively, the State argues that if we conclude that the fifty-six seconds of dog-sniff-related activities "delayed" the completion of the citation, then the time when the mission should have been completed is the actual time less the fifty-six seconds. Even under this analysis, the marijuana was produced before the citation should have been completed.

In support of this argument, the State first notes that the tasks tied to the traffic stop-- writing and delivering the citation--were completed at 14:51 minutes. The State then asserts that even if this Court were to conclude that these tasks reasonably should have been completed fifty-six seconds earlier, at 13:55 minutes, there was still no unlawful extension of the stop because the purpose of the stop transformed into a drug investigation at 12:13 minutes, when Hays handed Deputy Osborn the marijuana. Accordingly, the State asserts that the tasks tied to the purpose of the stop were not completed--nor reasonably should have been completed--before Hays surrendered the marijuana to Deputy Osborn.[4]

We agree with the State's alternative argument. As noted above, we do not find support in the record for the district court's finding that the citation should have been completed upon

---

[4] As further support for adopting its analysis, the State reminds us that the touchstone of the Fourth Amendment is reasonableness. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996). The State contends that Hays' interpretation of *Rodriguez* leads to a recipe approach for officers in conducting traffic stops. It would require officers to request the drug dog at the time that something else is occurring relative to the purpose of the stop, e.g., while returning to the police vehicle or a waiting for dispatch to conduct a warrants check. Additionally, this approach would preclude the traffic officer's ability to communicate with the canine officer upon his arrival and prior to running the drug dog, or for that matter, any officer arriving on scene if the communication does not directly relate to issuance of the citation.

concluding the call with dispatch or that Officer Koch intentionally delayed completing the citation while Deputy Osborn spoke with Hays. On the other hand, under *Rodriguez*, Officer Koch's calling for the drug dog (particularly while no other citation-related activities were occurring) and speaking with Deputy Osborn are activities unrelated to the purpose of the traffic stop. However, under the circumstances of this case, even deducting the fifty-six seconds taken by Officer Koch to request the drug dog and to speak with Deputy Osborn upon his arrival, the time that was reasonably necessary to address the traffic infraction had not yet expired when Hays handed over the marijuana. The purpose of the stop transformed into a drug investigation not only before the traffic citation was issued, but before it reasonably should have been issued on the facts presented here.

Based on Hays' surrendering the marijuana to Deputy Osborn and the drug dog's positive alert as to the presence of drugs in the vehicle, probable cause was established to search the vehicle. Under the automobile exception to the warrant requirement, police officers may search an automobile and the containers within it where they have probable cause to believe that the automobile contains contraband or evidence of a crime. *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). Thus, the discovery of methamphetamine found in Hays' purse during the search of her vehicle did not violate her Fourth Amendment rights. The district court erred in finding that Hays' Fourth Amendment rights were violated as an impermissible extension of the traffic stop.

**B.    *Miranda* Rights [5]**

The State also challenges the district court's conclusion that Hays was in custody during the traffic stop when Deputy Osborn questioned her regarding drugs, and that Hays should have been *Mirandized*. The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). Initially, the United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). However, this test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420,

---

[5]    On appeal, Hays does not address the district court's holding that her *Miranda* rights were violated and her confession was involuntary. We address these holdings because the State has challenged them and because we are remanding this case to the district court.

440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). Persons temporarily detained pursuant to a traffic stop are not "in custody" for the purposes of *Miranda*. *Berkemer*, 468 U.S. at 440. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010).

The district court determined that because Hays was "seated in her car with [Deputy] Osborn standing at the driver's side window, [Officer] Koch had her driver's license and registration, it was nearly midnight and there were two officers and a K9 on the scene," she was in custody for purposes of *Miranda*. These factors relied on by the district court are consistent with a routine traffic stop, but are not akin to a formal arrest. Because Hays has failed to demonstrate that at any time between the initial stop and her arrest she was subjected to restraints comparable to those associated with a formal arrest, the dictates of *Miranda* do not apply and her statements are admissible.

## C.     Voluntariness of Confession

Aside from the question of whether Hays should have been *Mirandized*, the district court also determined that Hays' confession was not made voluntarily. The use against a criminal defendant of a statement that the defendant made involuntarily violates the Due Process Clause. *Miller v. Fenton*, 474 U.S. 104, 109-10 (1985); *Haynes v. Washington*, 373 U.S. 503, 514-15 (1963); *State v. Doe*, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct. App. 1998). The exclusionary rule "applies to any confession that was the product of police coercion, either physical or psychological, or that was otherwise obtained by methods offensive to due process." *State v. Doe*, 130 Idaho 811, 814, 948 P.2d 166, 169 (Ct. App. 1997). In determining whether a statement was involuntary, the inquiry is whether the defendant's will was overborne by police coercion. *Arizona v. Fulminante*, 499 U.S. 279, 286 (1991); *Colorado v. Connelly*, 479 U.S. 157, 177 (1986); *Doe*, 131 Idaho at 713, 963 P.2d at 396; *State v. Davila*, 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct. App. 1995). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167. Deception or trickery does not automatically make a confession involuntary. *See, e.g.*, *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993). The proper inquiry is to look to the totality of the circumstances and then

ask whether the defendant's will was overborne. *Fulminante*, 499 U.S. at 287; *State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993).

Without further explanation, the district court held that "the totality of the circumstances, including [Deputy] Osborn not giving *Miranda* warnings prior to questioning Hays, the repeated questioning, length of the detention, Hays' apparent hypersensitivity, and [Deputy] Osborn's direct or implied promises" all demonstrate that Hays' confession was involuntary and not a product of her free will. However, under the facts of this case, there is nothing that rendered Hays' confession involuntary as the product of police coercion. Deputy Osborn's interaction with Hays did not exceed the scope of interaction with a driver in a normal traffic stop situation when a drug dog is lawfully utilized. Hays' apparent hypersensitivity, which Deputy Osborn could not have known, does not bear on whether the officer's conduct was coercive. Deputy Osborn's suggestion to Hays that if she had marijuana, producing it could be "handled easily" by a resulting citation or warning was not an improper promise. Hays was, in fact, cited for the marijuana.

### III.

### CONCLUSION

The district court erred in granting Hays' motion to suppress. The length of the investigatory detention was not unlawfully extended. Further, Hays' Fifth Amendment rights were not violated because she was not in custody for the purposes of *Miranda*. Lastly, Hays' statements were made voluntarily. Accordingly, the order granting Hays' motion to suppress is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Chief Judge MELANSON and Judge Pro Tem LANSING **CONCUR**.