**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44476**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Opinion No. 51** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  October 10, 2017** |
| | ) | |
| v. | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **SAMUEL J. DAVIS,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Cynthia K.C. Meyer, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Samuel J. Davis appeals from his judgment of conviction entered upon his conditional guilty plea to robbery, asserting the district court erred by denying his motion to suppress and that his confession was not voluntary.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Davis traveled to Spokane, Washington, to attend a hearing regarding the custody of his child.  Driving back to his home in Vienna, Missouri, he realized he did not have enough money to complete the trip and robbed a check-cashing business at gunpoint in Post Falls, Idaho.  He was identified as a suspect in the robbery pursuant to a review of video footage and a description provided by the clerk on duty.  An arrest warrant was issued and Davis was arrested after he reached Vienna.  Detectives from the Post Falls Police Department traveled to Vienna where

1

Davis was in custody and conducted an interrogation in which Davis made incriminating statements regarding the robbery.

The State charged Davis with robbery, Idaho Code § 18-6501, burglary, I.C. § 18-1401, in addition to a deadly weapon enhancement, I.C. § 19-2520. Davis filed a motion to suppress statements made during the interrogation, which was denied. Davis entered into a conditional guilty plea agreement in which he reserved his right to appeal the denial of his motion to suppress. He pled guilty to robbery and the State dismissed the burglary charge and the deadly weapon enhancement. Davis timely appeals.

## II.

## ANALYSIS

Davis asserts the district court erred in denying his motion to suppress because he invoked his right to counsel and because his confession was not voluntary. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

After an individual is advised of his right to the assistance of counsel, interrogating officers are only required to cease questioning if the individual makes a clear and unequivocal request for counsel. *Davis v. United States*, 512 U.S. 452, 461-62 (1994). If a reference regarding a desire for an attorney's assistance is ambiguous or equivocal so that a reasonable officer, in light of the circumstances, would have understood only that the suspect might be invoking the right to counsel, the officer is not required to stop questioning the suspect. *Id.* at 454-61; *State v. Payne*, 146 Idaho 548, 559, 199 P.3d 123, 134 (2008).

In this case, the interrogation included in part:

Detective 1:    Because I've got you stuck in this little room here, I'm going to tell you what your rights are, okay?
You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to

2

> a lawyer and have him present with you while you're being questioned. If you can't afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish one. Do you understand what I just told you?
>
> Davis:　　　Yes.

Then later in the interrogation, the following took place:

> Detective 1:　Was it a one-time thing or more than one?
>
> Davis:　　　*I think I need to talk to a lawyer before I say anything else.* I mean, I want to help you guys out, but I'm not--I got so much on the line. I'm in the Air Force reserves, I got my job at FedEx, I got my kid.

(emphasis added).

In *Payne*, the Idaho Supreme Court has held that phrases such as "I think," and "maybe I should" are equivocal. *Payne*, 146 Idaho at 559, 199 P.3d at 134. In *Payne*, the petitioner made the statement, "I don't think I should answer that." *Id*. The Court held it was not sufficiently clear such that a reasonable officer would understand it as an invocation of the right to remain silent, and found the petitioner did not clearly invoke his right to remain silent and the officer did not have a duty to discontinue his questioning of the petitioner. *Id*. Likewise, in this case, Davis's statement that, "I think I need to talk to a lawyer before I say anything else," is equivocal. Because Davis did not unequivocally invoke his right to counsel, the officer was not required to stop questioning. Therefore, the district court did not err in denying his motion to suppress based on invocation of the right to counsel.

Davis also asserts his confession was involuntary. Use of an involuntary statement against a criminal defendant violates the Due Process Clause. *State v. Hays*, 159 Idaho 476, 485-86, 362 P.3d 551, 560-61 (Ct. App. 2015). Whether a statement was involuntary turns on whether the defendant's will was overborne by police coercion. *Id*. In determining the voluntariness of a confession, a court must look to the characteristics of the accused and the details of the interrogation, including: (1) whether *Miranda*[1] warnings were given; (2) the youth of the accused; (3) the level of education or low intelligence of the accused; (4) the length of the detention; (5) the repeated and prolonged nature of the questioning; and (6) deprivation of food or sleep. *State v. Stone*, 154 Idaho 949, 953, 303 P.3d 636, 640 (Ct. App. 2013). Further, if the defendant's free will is undermined by threats or through direct or implied promises, then the statement is involuntary and not admissible. *Id*.

---

[1]　　*See Miranda v. Arizona*, 384 U.S. 436 (1966).

In this case, the officers and Davis conversed as follows:

Detective 2: I mean, you're caught. Bottom line is you're caught, and it just depends on whether you want to be responsible and fess up to what you did, and I'm guessing what [Detective 1] said is that you just didn't have enough money to get home. And that's understandable. It really is.

Davis: What kind of a deal can you give me?

Detective 2: I can't make any deals. That's up to the prosecutor.

Davis: Because I can't afford to be expedited (sic) back. I mean--

Detective 1: Well, here's what I can tell you. As this case stands right now, if I don't have your side to include in it, it's just going to look like some guy going in at gunpoint and scaring the bejesus out of this lady, stealing the money, and taking off across the country.
So my goal today is to find out what the real story is here and find out--I believe it's a one-time thing, but I have to hear that from you.
So, certainly, you know, if you want an attorney, you could go that route, but I would really like to be able to document this, because all I've got is what I know, and it's enough to charge you and it's enough to prove it, but if this was just a one-time thing where you were screwed and you were stuck in Post Falls or you were stuck in Spokane and you didn't have a way to get home, I get it. But I need to hear that from you.

Detective 2: The problem here is we also have a couple more that happened just previous to that in Spokane, so they're asking us to determine whether or not you are also involved with that or whether you just were involved with ours.

Detective 1: So, Sam, what's it going to be?

Detective 2: You need to do the right thing, Sam. You do.

Davis: I know, but if I give you my side of the story, can you get with the prosecutor to work out a deal where I don't get expedited (sic) back?

Detective 1: What I can promise you is that I will tell the prosecutor your side of the story. I'm not authorized to make any sort of deal. I can't --

Davis: But is there any way you can call from here and talk to them?

Detective 1: I can certainly share the information, but I can't make any deals.

Detective 2: The warrant's there. The warrant's been put in the system. That's--

Davis: I seen that. That's what they told me. It's a $100,000 bond.
I mean, as long as you can guarantee to call the prosecutor tonight.

Detective 1: Yeah, we'll call the prosecutor.

Detective 2: We'll call the prosecutor.

Detective 1: For sure.

Davis: When I left the courthouse--

Detective 2: Wait. Before you do this, you want to talk to us; right?

Davis: Yeah.

Detective 2: Okay.

4

Davis:          I mean, that's the only way I got.  I mean, I can't afford a lawyer.
                If I get expedited (sic), I'm losing everything and then some.  I'll
                never be able to recover, but--
Detective 2:    So start . . . from the beginning.

Davis acknowledges he was read his *Miranda* rights, that there is no evidence he was subject to an inordinately long interrogation, or that he was deprived of food, water, or sleep.  At the time of the interrogation, Davis was twenty-eight years old, had served in the United States Air Force, and he does not dispute the district court's finding that he had "at least average intelligence."  Davis focuses on the nature of the questioning, asserting the detectives took advantage of the fact he did not want to be extradited back to Idaho and that the detectives "clearly suggested that the only way he could avoid extradition to Idaho was by doing the right thing and confessing to the robbery."  Further, Davis argues that his statement that he could not afford a lawyer suggests he did not fully understand the *Miranda* warnings since he did not realize an attorney could be appointed free of charge.  Davis submits that he only spoke to the officers after they promised to talk with the prosecutor, with whom Davis wanted them to discuss avoiding extradition.  He asserts the totality of circumstances shows that he only confessed to avoid extradition.

Davis was concerned about extradition, but his concern does not suggest police coercion.  Nothing said by the officers took improper advantage of his concern or amount to a threat to coerce a confession.  The officers repeatedly stated they were not in a position where they could offer him a deal guaranteeing he would not be extradited.  They did not directly or indirectly promise Davis that he would be able to stay in Missouri.  While the officers did promise to talk with the prosecutor, it was only an assurance of telling Davis's side of the story.  The agreement to call the prosecutor did not rise to the level of his free will being undermined by direct or implied promises.  Additionally, Davis's lone comment that he could not afford a lawyer does not negate that he verbally acknowledged he understood his *Miranda* rights.  Thus, the district court correctly determined Davis's statements were voluntary and denied his motion to suppress.

## III.

## CONCLUSION

Davis did not unequivocally invoke his right to counsel and his confession was voluntary and admissible.  Therefore, the district court's order denying his motion to suppress is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.

5