# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46524

STATE OF IDAHO,

       Plaintiff-Respondent,

v.

JOSHUA D. DEWITT,

       Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: January 23, 2020

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order denying motion to suppress and judgment of conviction for trafficking in marijuana, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Joshua D. Dewitt appeals from the judgment of conviction for trafficking in marijuana. Dewitt argues that the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Dewitt was charged with trafficking in marijuana, Idaho Code § 37-2732B(a)(1). The charges arose after Trooper Marrott observed a vehicle, later determined to be driven by Dewitt, make two illegal lane changes. Based on the observed violations, Trooper Marrott initiated a traffic stop, approached the passenger side of Dewitt's vehicle, and made contact with Dewitt. Trooper Marrott informed Dewitt of the purpose of the stop. Next, the district court found that Trooper "Marrott asked Dewitt for his driver's license, proof of insurance, and vehicle

1

registration. . . . While waiting for Dewitt to produce the requested documents, Marrott asked several standard questions about the origin and destination of Dewitt's trip, and the presence of anything illegal in the vehicle."[1] In response to Trooper Marrott's travel inquiries, Dewitt explained that he traveled from Pekin, Illinois to Twin Falls and the drive took twenty-eight hours.

While Dewitt was searching for his documentation, Trooper Marrott inquired regarding specific drugs including methamphetamine, cocaine, heroin, marijuana, and prescription medication. In regard to prescription medication, Dewitt explained that he had a bottle of amphetamine which was prescribed to him. Next, Dewitt stopped searching for the requested documentation, reached in the glove box, retrieved the pill bottle, and handed it to Trooper Marrott for his inspection. Thereafter, Dewitt continued to search for his documentation but was unable to produce a valid registration card. Trooper Marrott told Dewitt to continue searching and he would return to his patrol vehicle to run Dewitt's other information. Upon returning to the patrol vehicle, the trooper ran Dewitt's information through dispatch. While waiting for a return call from dispatch, Trooper Marrott used his computer to verify that the drive time from Pekin, Illinois to Twin Falls was actually twenty-two hours. By the time Trooper Marrott had finished his search regarding the drive time, a second trooper had arrived on scene. Trooper Marrott informed the second trooper about the stop, removed Dewitt from the vehicle, and ran his drug dog around Dewitt's vehicle. The dog indicated on the vehicle. As a result of the dog's indication, Trooper Marrott searched the vehicle and discovered two large duffle bags of marijuana. Trooper Marrott advised Dewitt of his *Miranda*[2] rights, asked him various questions, and placed him under arrest.

Based on the results of the vehicle search, the State charged Dewitt with trafficking in five pounds or more of marijuana. Dewitt filed a motion to suppress the evidence obtained as a result of the search and the statements made after he allegedly invoked his right to counsel. The district court held a hearing and ultimately denied Dewitt's motion to suppress. Consequently, Dewitt entered a conditional guilty plea to trafficking in less than five pounds of marijuana, Idaho Code § 37-2732B(a)(1)(A), reserving his right to appeal the district court's denial of his

---

[1] On appeal, Dewitt challenges the district court's factual findings arguing that "the undisputed evidence establish[es] that [Trooper] Marrott made unrelated travel inquiries *prior to* requesting Mr. Dewitt's documentation . . . ." The State does not dispute Dewitt's contention.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

motion to suppress. The district court sentenced Dewitt to a unified term of seven years with one year determinate. Dewitt timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Dewitt argues that the district court erred when it denied his motion to suppress because Trooper Marrott (1) unlawfully prolonged the traffic stop and (2) unlawfully questioned him after he invoked his right to counsel. In response, the State contends that the district court did not err in denying Dewitt's motion to suppress because the traffic stop was not unlawfully extended and Dewitt did not invoke his right to counsel.

### A.     Unlawful Extension

Dewitt argues that Trooper Marrott unlawfully extended his traffic stop in violation of the Fourth Amendment three times: (1) by asking Dewitt questions relating to his travel prior to requesting Dewitt's license and registration; (2) asking Dewitt questions relating to illegal and prescription drugs; and (3) by deploying a canine without reasonable suspicion. We will address each of Dewitt's contentions in turn below.

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As the text indicates, the "touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."

3

Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 575 U.S. at 355; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). An officer may also require the occupants to exit the vehicle during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

### 1. Travel related questions

First, Dewitt contends that Trooper Marrott's questions relating to Dewitt's travel unlawfully extended his traffic stop because Trooper Marrott paused processing the traffic stop and took forty-five seconds to question Dewitt regarding his travel plans. Dewitt asserts that the United States Supreme Court holding in *Rodriguez* and the Idaho Supreme Court holding in *State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016), dictate that Trooper Marrott's questions constituted an abandonment of the traffic mission because they were unrelated to the purpose of the stop and added time to Dewitt's detention making it an unreasonable seizure under the Fourth Amendment.

In making this argument, Dewitt challenges the district court's factual finding regarding the order in which Trooper Marrott inquired into Dewitt's travel plans. Dewitt argues that "the undisputed evidence establish[es] that [Trooper] Marrott made unrelated travel inquiries [after informing Dewitt of the basis of the stop, but] *prior to* requesting Mr. Dewitt's documentation

4

. . . ." The State does not dispute Dewitt's contention. The district court's relevant findings are as follows: "Marrott asked Dewitt for his driver's license, proof of insurance, and vehicle registration. . . . While waiting for Dewitt to produce the requested documents, Marrott asked several standard questions about the origin and destination of Dewitt's trip and presence of anything illegal in the vehicle." After a review of the evidence, we agree with Dewitt. The undisputed evidence presented below was that Trooper Marrott informed Dewitt of the basis of the stop, asked four travel-related questions, and then requested Dewitt's documentation. Thereafter, Dewitt began searching for the requested documentation. While he was doing so, Trooper Marrott questioned Dewitt about the presence of illegal substances.

Notwithstanding the erroneous factual finding and accepting the district court's other unchallenged factual findings as true, we will review the constitutional question de novo. Thus, we turn our analysis to Dewitt's contention that, under *Rodriguez* and *Linze*, an officer engaging in a lawful traffic stop may not question a driver regarding his or her past or future travel plans.[3] This Court recently examined *Rodriguez* and *Linze* and concluded that "based on the context and the language of *Rodriguez* and *Linze*, abandonment occurs when officers deviate from the purpose of the traffic mission in order to investigate, or engage in safety measures aimed at investigating crimes unrelated to roadway safety for which the officers lack reasonable suspicion." *State v. Still*, ___ Idaho ___, ___ P.3d ___ (Ct. App. Aug. 28 2019) (review pending). Based on this rule, we conclude that an officer's questions, asked during a lawful traffic stop, regarding a driver's destination and purpose do not constitute a *Rodriguez* abandonment. To the contrary, such questions are ordinary inquiries incident to the traffic stop. *State v. Hays*, 159 Idaho 476, 480, 362 P.3d 551, 555 (Ct. App. 2015).

Trooper Marrott did not abandon the purpose of the traffic stop to engage in a separate criminal investigation. As the district court found, Trooper Marrott asked Dewitt "several standard questions about the origin and destination of Dewitt's trip." In specific, Trooper Marrott asked (1) "Where are you coming from today?"; (2) "Where are you headed?";

---

[3]     The district court did not make a legal conclusion in relation to Dewitt's argument that the stop was prolonged because of the trooper's travel related questions. The only prolonged stop argument the district court addressed was whether the dog sniff amounted to an unlawful extension. However, Dewitt did raise this argument, albeit inartfully, in his memorandum in support of his motion to suppress and neither party contends that this argument is not preserved for appeal.

(3) "Where is home for you?"; and (4) "How long were you out here?" These questions, and questions regarding a driver's destination and purpose in general, relate to the traffic-based mission and are permitted to put the traffic violation into context. Although Dewitt contends otherwise, "*Rodriguez* does not prohibit all conduct that in any way slows the officer from completing the stop as fast as humanly possible. It prohibits abandoning the stop to investigate other crimes." *Still*, ____ Idaho at ____, ____ P.3d at ____. Here, Trooper Marrott was not investigating any other crime apart from the basis of the traffic stop when he inquired into Dewitt's travel itinerary. Such questions are routine tasks that an officer is permitted to engage in when conducting a traffic stop and do not violate the Fourth Amendment. Accordingly, the district court did not err in denying Dewitt's motion to suppress on this basis.

## 2. Drug-related questions

Second, Dewitt contends that Trooper Marrott prolonged the stop by asking questions about the presence of drugs in the vehicle. In specific, Dewitt contends that the stop was prolonged because the trooper's inquiry regarding prescription drugs caused Dewitt to stop looking for his documentation, search for a pill bottle, and hand it to Trooper Marrott for inspection. In response, the State argues that Trooper Marrott's questions were proper because, although they were unrelated to the purpose of the stop, they did not add time to Dewitt's detention.

As set forth above, "An officer's inquiries into matters unrelated to the justification for the traffic stop, [the United States Supreme Court] has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333. In this case, the district court found that, "While waiting for Dewitt to produce the requested documents, Marrott asked several standard questions about . . . [the] presence of anything illegal in the vehicle." Based on this finding, we conclude that Dewitt's detention was not unlawfully prolonged by Trooper Marrott's drug-related inquiries.

Trooper Marrott's questions about drugs were unrelated to the purpose of the stop. Nevertheless, the inquiries did not extend the normal length of the stop because Dewitt was in the process of searching for his documentation when the trooper posed the questions. Although Dewitt contends that his stop was prolonged because the prescription drug inquiry caused him to stop looking for his documentation, search for a pill bottle, and hand it to Trooper Marrott for

6

inspection, we are not persuaded by Dewitt's contention. The fact that Dewitt chose to find his prescription medication bottle and chose to hand it over to the trooper has no bearing on our analysis of whether Trooper Marrott extended Dewitt's stop in violation of the Fourth Amendment. Trooper Marrott did not extend the stop by asking Dewitt questions about drug usage while waiting for Dewitt to retrieve his documentation. *See State v. Renteria*, 163 Idaho 545, 548-49, 415 P.3d 954, 957-58 (Ct. App. 2018). Accordingly, Trooper Marrott's questions did not violate the Fourth Amendment.

### 3.     Drug-dog sniff

Third, Dewitt argues his traffic stop was prolonged because Trooper Marrott abandoned the purpose of the traffic stop to conduct a dog sniff without reasonable suspicion. In response, the State argues that the district court correctly concluded that (1) deploying the drug dog did not extend the stop, and (2) regardless, the dog sniff was supported by independent reasonable suspicion.

Although a drug-dog sniff cannot fairly be characterized as part of the officer's traffic mission, it is well-established that a drug-dog sniff conducted during a lawful traffic stop is constitutionally permissible if it is executed in a reasonable manner and does not itself infringe upon a constitutionally protected privacy interest. Conversely, a drug-dog sniff conducted after an otherwise-completed traffic stop is unconstitutional absent independent reasonable suspicion for the sniff. *Rodriguez*, 575 U.S. at 350-51. The "critical question" is "not whether the dog sniff occurs before or after the officer issues a ticket, but whether the sniff adds time to the stop." *State v. McGraw*, 163 Idaho 736, 740, 418 P.3d 1245, 1249 (Ct. App. 2018); *see also Rodriguez*, 575 U.S. at 357.

In this case, Trooper Marrott called Dewitt's information in to dispatch and then, among other things, engaged in a drug dog sniff of Dewitt's vehicle while waiting for dispatch. The district court found that "[Trooper] Marrott was able to complete the deployment of [the drug dog] before dispatch returned the information . . . ." The court explained that "[t]here [was] no indication or accusation that [Trooper] Marrott was not diligently pursuing his duties." Based on these findings, the court concluded that Dewitt was not entitled to suppression because the sniff did not prolong the stop as Trooper "Marrott was still waiting on a return from dispatch, and for Dewitt to produce valid registration." In addition, the district court concluded that the dog sniff

7

was also proper because Trooper Marrott had independent reasonable suspicion to engage in a drug investigation.

Dewitt argues that the district court erred because Trooper Marrott "explicitly and unequivocally abandoned the purpose of the stop right after he discovered the discrepancy in travel times report[ed] by Mr. Dewitt" to engage in a drug investigation. Dewitt rests this argument on the fact that Trooper Marrott believed he had reasonable suspicion to engage in the drug-dog sweep. According to Dewitt,

> The video shows clearly that, after discovering the travel time discrepancy, [Trooper] Marrott told dispatch that he had "reasonable suspicion" to believe Mr. Dewitt was involved in criminal activity, and [Trooper] Marrott left his patrol car and made the same announcement to Mr. Dewitt, telling Mr. Dewitt he was now being detained due to reasonable suspicion of drug activity.

Whether Trooper Marrott abandoned the purpose of the traffic stop does not answer the relevant legal question because, as noted, a drug-dog sniff that occurs during a lawful traffic stop is permitted. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *Linze*, 161 Idaho at 609 n.1, 389 P.3d at 154 n.1. The question, instead, is whether the drug-dog sniff occurred during the course of the traffic stop or whether the stop was unlawfully prolonged as a result of the sniff.

We conclude that Dewitt's stop was not prolonged by the drug-dog sniff. Regardless if Trooper Dewitt thought he had reasonable suspicion to engage in a drug investigation, the drug-dog sniff did not add time to Dewitt's traffic stop. *See Renteria*, 163 Idaho at 548-49, 415 P.3d at 957-58 (finding that the officer's unrelated investigation did not extend the traffic stop "because dispatch still had not confirmed Renteria's valid driving privileges or responded about . . . any outstanding warrants."). Dewitt was being detained for a traffic violation and his detention was not unlawfully prolonged by the drug-dog sweep. To the contrary, the district court found that Trooper Marrott completed the drug-dog sweep before dispatch returned Dewitt's information. Dewitt does not challenge this finding on appeal. Trooper Marrott was free to engage in the drug-dog sweep while he waited for dispatch to return Dewitt's information. After the dog indicated on the vehicle, Trooper Marrott had probable cause to search Dewitt's vehicle. Accordingly, the drug-dog sweep did not violate Dewitt's Fourth Amendment rights. Because we conclude that Dewitt's detention was not prolonged, we need not analyze whether the drug-dog sweep was supported by independent reasonable suspicion.

8

**B.      Right to Counsel**

Finally, Dewitt argues that the district court erred in denying his motion to suppress the statements that he made after Trooper Marrott advised him of his *Miranda* rights.  Dewitt claims that he clearly and unequivocally invoked his right to counsel and Trooper Marrott violated his Fifth Amendment Rights by continuing to question him.

After an individual is advised of his right to the assistance of counsel, interrogating officers are only required to cease questioning if the individual makes a clear and unequivocal request for counsel.  *Davis v. United States*, 512 U.S. 452, 461-62 (1994).  If a reference regarding a desire for an attorney's assistance is ambiguous or equivocal so that a reasonable officer, in light of the circumstances, would have understood only that the suspect might be invoking the right to counsel, the officer is not required to stop questioning the suspect.  *Id*. at 454-61; *State v. Payne*, 146 Idaho 548, 559, 199 P.3d 123, 134 (2008).

In this case, the district court found that Trooper Marrott informed Dewitt of his *Miranda* rights immediately after arresting him.  Trooper Marrott asked Dewitt if he understood his rights and Dewitt responded that he did understand.  Thereafter, the district court explained the events as follows:

> [Trooper] Marrott said to Dewitt "so let's talk.  You work with me and I'll work with you the best I can."  Marrott and Dewitt continued to converse about the source of the drugs and his willingness to cooperate with police for a couple of minutes.  Marrott asked Dewitt if he would be willing to cooperate.  Dewitt paused for a moment and appear[ed] to be contemplating his options, he eventually responds while shaking his head side to side, "without my lawyer." Marrott said "okay, that's fine."  Marrott then proceeded to empty and inventory the contents of Dewitt's pockets.  While doing so, Marrott asked "how much do you have total?"  Dewitt responded "eighteen."  Marrott then asked "how much did you buy it for?"  Dewitt stated that he paid "twenty-one."  Marrott asked "what are you selling it for in Illinois?"  Dewitt said that "it depends."  After taking an inventory of the contents of Dewitt's pockets, Marrott reminded Dewitt that he does not have to answer, and asks again about where he picked up the drugs.  Dewitt continued to discuss the source of the drugs with Marrott.

Based on this exchange, the district court concluded that Dewitt did not invoke his right to counsel.  We agree.

We conclude that Dewitt did not make a clear and unequivocal invocation of his right to counsel.  Dewitt alleges that the statement "without my lawyer" while shaking his head side to side amounted to an unequivocal invocation of his right to counsel.  In light of the circumstances, a reasonable officer in Trooper Marrott's position could have thought that Dewitt might be

9

invoking his right to counsel. However, an officer could have reasonably assumed otherwise. Because it was not clear and unequivocal, Dewitt did not invoke his Fifth Amendment right to counsel. *Davis*, 512 U.S. at 454-61. Accordingly, the district court did not err in denying Dewitt's motion to suppress the statements he made after being given *Miranda* warnings.

## IV.
## CONCLUSION

Because the district court did not err in denying Dewitt's motion to suppress, Dewitt's judgment of conviction is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.